## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed July 1, 1902.

### THOMAS J. CANNON
### VS.
### THE BRUSH ELECTRIC COMPANY.

*Charles M. Armstrong* and *R. E. Lee Marshall* for the exceptant.

*Randolph Barton & James M. Ambler* for ratification of account.

DENNIS, J.—

In October, 1881, the United States Electric Light Co. attempted to incorporate under the General Law, and in September, 1885, the United States Electric Lighting Co. made a similar attempt; and in October, 1885, the United States Electric Power & Light Co. was attempted to be formed by a consolidation of the two former companies.

All of these attempted incorporations and the consolidation are under the General Law; no doubt seeming to be entertained of the validity of such incorporations.

The defendant company, the Brush Electric Co., was likewise incorporated —or rather the attempt was made to incorporate it under the General Law; but as its incorporation was subsequently validated by an act of the Legislature, no question arises in this case as to its proper corporate formation.

Acting under the supposed legal validity of its incorporation, the United States Power and Light Company organized by the election of directors, and other proper officers, issued its stock, which was duly subscribed for, and proceeded to conduct business, by the erection of a plant and furnishing light and electric power to its customers; and so conducted business as a duly organized corporation for many years.

Shortly after its organization, the Brush Company purchased from certain stockholders a controlling interest in the United States Company; and the latter company continued its business under the control of the Brush Company by reason of its ownership of the majority of its stock. While this was the situation, the court, in 1897, decided that the United States Electric Power and Light Co. was not duly incorporated, and did not acquire the

powers of a legally incorporated company under the laws of Maryland.

Under these circumstances, the main question presented in this case is what was the relation between the several stockholders of the United States Co.—are they to be treated as partners *inter sese*, or are the principles of law which regulate the rights of stockholders of a regularly organized corporation, to be adopted as the rule for determining their respective rights; for, as against creditors, and third parties, there is no question that they are to be treated as partners.

The auditor, in his admirable report, had adopted the latter view, and I thoroughly concur in his reasoning and conclusions, and I adopt his statement of the considerations which have led him to this conclusion as my own, feeling that nothing that I could say could add to its force.

He says: "In view of the fact that the incorporation of the United States Company has been found to have been void, and that there was no intention of the parties to become copartners as between themselves, it appears to the auditor that the shareholders in this unincorporated company should be treated as members of a voluntary association who have by their acts agreed to conduct its affairs as between themselves, as a corporation, the interests in which are represented by shares of stock, and the management of which has been by them confided to the board of nine directors, and that the written terms upon which they have agreed to conduct the association are to be found in the pretended charter and the by-laws of the association. If the auditor is right in this view of the case, then as between the controlling shareholder, the Brush Company, a duly incorporated company, and the shareholders of the United States Company who had conducted the United States Company as a corporation, it would appear that the principles of law which govern the dealings of one corporation with that of another corporation are the proper principles to apply in this case." This means that as between the ordinary stockholders in such a case these are to be treated as stockholders of a duly incorporated company, but involves the further and distinct question as to the rights and duties imposed upon one corporation

which, by reason of its control of a majority of the stock of another corporation, controls and directs the management of the latter to its disadvantage and injury.

This was the question before the Court of Appeals in the case of Booth vs. Robinson, 55 Md. 419, with this exception, that the Powhattan Steamboat Company, which was the company which, it was alleged, was wrecked by the mismanagement of the directors of a rival company, was a duly incorporated company, whereas in the present case the United States Company was an incorporated company or association, but which as between its members was conducted on the same principles and under the same form of management as a corporation. In that case, the Court of Appeals held that the directors of the controlling company, were only answerable for fraud, or such *crossa negligentia* in the management as amounted to fraud, and that the burden of proof in establishing such mismanagement was upon the complainants; and the liability of the controlling company was, in that case, put upon the same footing as the personal liability of its directors.

In regard to the charges in the bill of complaint as to this phase of the case, I can add nothing to the very thorough and conclusive way in which the auditor has treated them. The testimony, which I have reviewed with care, seems to me wholly to compel him to the deductions he has made: and I think the main charges of fraudulent mismanagement by the Brush Company have already been thoroughly discussed and passed upon in the case of this same company with Davis, by the Court of Appeals in 77 Md. 35.

I should have nothing further to say in this case but for the earnestness and ability with which the learned counsel for the plaintiff have combated the first proposition in the case. It is their contention, most strenuously and ably urged, that the relations between the stockholders of an unsuccessfully incorporated company are those of partners even *inter sese;* that they are analogous to the case of stockholders in the "joint stock companies"—so common in England and in some of our own States, in which the several stockholders are always treated as partners, and that therefore the principles of law ap-

plicable between partners should be applied in a case like the present.

Superficially, the analogy between the two classes of stockholders seems to be close.

A joint stock company is thus defined (Pomeroy's Smith's Perc. Law., Sec. 77) : "A joint stock company is a partnership, consisting of a large number of members, whose rights and liabilities would be precisely the same as those of any sort of partners, had not their multitude obliged them to adopt certain peculiar regulations for the government .of the concern, which are ordinarily contained in an instrument called a deed of settlement. The capital of the concern is ordinarily divided into equal parts, called shares, a certain number of which is held by each member of the company. and in proportion to these he is entitled to participate in the profits of the undertaking. The immediate superintendence of its affairs is delegated to a portion of the members, called directors, subject, nevertheless, to the general control of the body, assembled at stated intervals, or on particular occasions when they may be convened. The general body of shareholders, thereupon, except upon such occasions, unlike the members of an ordinary partnership, have no power to interfere in its concerns, or to bind the company."

This definition would seem, on the surface, to make the relations of the stockholders of the United States Electric Light and Power Co. analogous to those of the shareholders in a joint-stock company; but the *fundamental test is wanting.* Our Court of Appeals has established, as the essential element of every partnership between the parties themselves, their *actual intent* that it should be a partnership; and under this test, the supposed analogy between the members of the joint stock companies, and the stockholders of the United States Co., wholly fails. In the case of Joint Stock Companies, the parties agree in the beginning to form a partnership, but, for purposes of convenience and effective administration, where so many individuals ·are concerned, they adopt a scheme of government similar to that of corporate management; but they adopt it for this purpose, and no other, and they still *intend* that their relations *inter sese* shall be that of partners.

But in the case of the stockholders of the United States Company, it was never intended they should be partners, nor is it pretended that any shareholder thought he would be so regarded ; they all imagined in perfect good faith, that their corporate organization was legal, and that the legal relations of stockholders under a valid incorporation would prevail. Under these circumstances, it seems to me clear that their assets and liabilities *inter sese* are to be determined by precisely the same principles of law as would have been applied had their intentions as to the formation of a corporation been successfully carried out.

Finding no error, therefore, in the auditor's report and account, I will overrule the exceptions and ratify the account.

[NOTE: Mr. Robert F. Brent was the auditor who made the report and stated the account in the case.]